We have three argued cases this morning. The first is number 22220, ZyXEL Communications Corp. v. UNM Rainforest Innovations. Mr. Dietrichs, is that how you pronounce it? Yes, Your Honor. Good morning, Your Honors. I'm Jonathan Dietrichs for ZyXEL Communications. May it please the Court. Much of the Board's analysis in its final written decision is well-reasoned and supported by the record, but there are two issues where the Board got it wrong. First, it's determination regarding Claim 8 that there was no motivation to combine. And second, it's grant of UNM's motion to amend, which considered new argument on reply. I intend to spend the bulk of my main argument time on those two issues. I'll start with Claim 8. And I'd first like to point out that Claim 8 has largely overlapping scope with Claim 1, which the Board determined to be unpatentable. That is perhaps easiest to see by looking at the table on page 2035 of the Joint Appendix, which shows the language of Claims 1 and 8 side-by-side. Specifically, we see that the preamble and elements A, B, D, and E are the same. The Board found that the primary reference talent dart discloses each of those elements, and UNM has not contested those. Let me ask a question. Let's assume hypothetically that we were to agree with you on Claim 8. Does that have any impact on the motion to amend? Because when I look at the amended claim, it seems to do nothing more than combine Claim 1 and Claim 8. Yes, Your Honor, it does. You never raised the – there's no argument made that I could discern that you were saying that the Board – that a reversal on Claim 8 would impact the analysis of the motion to amend. That's right. We haven't made that argument. In the motion to amend analysis, we applied the Lee secondary reference instead of Nystrom, whereas the petition analysis – Is there a reason that you care to explain? I mean, is it your view that this pilot – the denser pilot symbols, which are Claim 8, aren't they a significant portion of the amended claim? Yes, Your Honor, and we felt that was also disclosed in Lee, and given the Board's prior determinations on Nystrom, we went in a different direction. I think the context of the question, if I understand it correctly, is let's assume that you lose on the amendment question, that they were either entitled in the reply or elsewhere to address the original claim elements that they didn't address in the first motion of the late amendment, and that we say that the Board was correct for one reason or another in allowing them to proceed with the amendment. I think the question is, under those circumstances, and then hypothetically that we agree with you on Claim 8, where do we stand on the merits of Claim 44? In that circumstance, we also believe the Board got it wrong on the merits and neglecting the relevant disclosures of Lee that we relied on. But you never relied on Nystrom on the motion to amend. That's right. And while the motion to amend was pending, you didn't know how Claim 8 was going to turn out at that point, right? That's right, Your Honor. What was the Board's theory as to the patentability of Claim 44? You know, Your Honor, it's difficult to determine. In our view, the Board clearly got it wrong when you look at Lee's disclosure of shorter symbol periods and in view of the showing that was made, that that would lead to different densities. But the density, I mean, you used Nystrom to deal with Claim 8. That was one of... Yes. Right. There's no dispute that Nystrom discloses different densities in time. Okay. But you don't think Nystrom had an effect on the motion? We do. Your Honor, I also respectfully submit that the substitute claims are also obvious over Taladar and Nystrom. But did you ever argue that? No, we didn't. We have limited pages. That's a problem. Right. But if I may turn back to Claim 8. Why don't we turn to the motion to amend? The PTO, I mean, sometimes it intervenes and sometimes it doesn't in the claim, in these cases. Early on, it was intervening, but there was sort of a substantive rule or regulation or something was at stake. Is there any contact between the parties in terms of PTO intervening in these cases, which implicate their rules, a series of rules, a series of precedential and non-precedential previous opinions? It would be nice to get their view on all this regulatory stuff, right? Right. And I believe, Your Honor, the relevant precedent is the board's precedential opinion in electrosonics, which requires the written description support. But that predates their pilot program, doesn't it? It does. So how do we know what they think of the precedential electrosonics in light of everything that's happened since then with the pilot program? Yes, Your Honor. So nothing in the pilot program notice suggests an intent to overrule electrosonics. And the relevant rule here is Rule 4223B, which prohibits the arguments on reply, stating that a reply may only respond to arguments in the corresponding opposition. Well, isn't 4223B dealing with IPRs and petitions? And to me, that's kind of a different regime dealing with statutory provisions and requirements. It is applicable to IPR petitions, but on its face, it applies to motions. A petition isn't a motion. So a motion, such as a motion to amend, falls under that rule. And we also see in the pilot program notice, it's consistent with that. Specifically, the pilot program notice envisions a choice following the preliminary guidance. Either the patent owner files a revised motion to amend. Okay, but take that. Why wasn't the board wrong in refusing to allow them to file a revised motion for a leave to amend? Because the patent owner directed its revised motion to amend to the identical proposed substitute claims, which is essentially a do-over. That's not what the pilot program notice permits. Well, I'm not sure that that's correct. Well, they argue in the red brief that the pilot program does permit that. So meeting the pilot program notice. Why does it make sense to require that the amendment present an amended claim when it can be addressing other matters that are recognized to be relevant? That is, deficiencies that the pilot program decision identified in the motion relating perhaps to claim elements that were present before. Yes, Your Honor. So on page 9499 of the notice, it's unmistakable that the revised, so I'll quote, a revised motion to amend includes one or more new proposed substitute claims in place of previously presented substitute claims. I don't think that leaves any that it must include. Why does that make sense? Why would you require that the revised motion include a revised substitute claim? Well, the pilot program addresses that, Your Honor, in stating that the purpose of the revised motion to amend is to address the issues in the preliminary guidance or the petitioner's opposition. For example, if the claims were rendered obvious, the patent owner would have a chance to propose narrower claim scope to overcome the prior art. It's not intended as a complete do-over for failing to satisfy. Maybe I'm misunderstanding. I read the pilot program regulation, and tell me if you disagree, that it allows for either an amended motion or new evidence in a reply. Here there was new evidence in the reply, and that is the issue. As I read the reg, it allows for that. Yes, Your Honor. So are you saying that the reg is invalid? No, Your Honor. I'm saying that new evidence, just as it is in the petition context, refers to rebuttal evidence. So it goes to the distinction between new argument, which the pilot program notice explicitly states is permitted in a revised motion to amend, versus new evidence. In other words, like a petitioner's reply declaration is new evidence, but it's limited to rebutting the patent owner's response in the same way. I mean, what we're talking about here is adding stuff covering written description of all the claim elements. And you're saying that the contours of the reply under the regs is not broad enough by allowing new evidence to include what you would call, I guess, arguments? That's right, Your Honor. The rules consistently distinguish between new argument and new evidence. New evidence simply refers to rebuttal evidence. Okay, well, that's one side of it. The other argument, I don't even know if your friend makes it, is that even if you're right about that, under cases like Nike, I mean, the board here issued its preliminary guidance, and essentially it did your job for you, or it did their job for them, by talking about the written description of the claims. Is the board not free when something is obvious in the record and exists to come up with its own stuff, even assuming that you couldn't do it in reply? The problem, Your Honor, is that that guidance comes after the petitioner's opposition to the motion to amend. That's the only procedural point in which the petitioner is able to submit expert evidence. I agree. I get that point. I take your point. And that's a point that we've alluded to in a lot of our cases. It's kind of an APA field to respond. But I think we've also got cases like Belvin and Axomics, whatever it's called, that say, did you file a motion to be able to expand your reply under the circumstances here? In the context of the briefing on the revised motion to amend, we made it clear to the board that we were being prejudiced by not having the ability to file expert evidence in support of our opposition. And did you ask to submit? Did you file a motion? I mean, there are plenty of motions flying around in these IPRs, including if you want to transcend the rules or under the circumstances, saying we need to provide further evidence. We've got cases where we say, yeah, if you ask for it, the board should have given it. But you didn't officially ask in a motion or otherwise to be able to expand the contours of your reply, did you? Not in the form of a motion, Your Honor. And if you did ask, did you say, hey, under these circumstances, we feel like we should be able to permit some stuff, and the board said no? Well, we pointed out the prejudice we were suffering by not having a chance to view the written description argument and have a full opposition to respond to it. And did the board say anything? Did it say too bad? The board said, you've got to serve a plight, and under the rules for a serve a plight we're not able to submit any evidence. Do you have a record site for that? No, Your Honor. Well, maybe on reply you can give us a record site to that discussion. Did you or do you in front of us contend that there's not adequate written description for all of the elements of the amended claims? So first, I would contend that the procedural argument alone is sufficient, and we see that in intelligent biases. I understand that argument, that if we get past that. Right. So we relied only on the procedural argument and the record below. I would submit, though, that electrosonics required a showing support for the claims as a whole, and I would submit that even though UNM submitted support for individual claim limitations, they did not meet their burden to show the claims as an integrated whole. But if you're relying solely on your procedural argument and you're not saying that you had anything more to say of substance, how are you prejudiced? Because we didn't have a chance to submit. Yeah, but Your Honor, what is it that you want to say? I mean, the record below isn't sufficient to support that. Well, you could say, I mean, your reply is limited, your surreply is limited, but how would, if you had been able to submit whatever you could in the surreply, did you have argument, declarations, or whatever to establish the insufficiency of the written description for the amended claim? We didn't even get that far, Your Honor. It's a yes or no question. I mean, you're in the midst of litigation. I know you didn't get that far to do it, but you must have. You don't file motions, wow, we want to do this, and not know what it is you want to do. What would you have done? That's a good question, Your Honor. I would just like to point out, the final written decision criticized counsel, Ziesel for making argument, attorney arguments that said, oh, you don't have an expert site for that. So we know that we can't make technical arguments, especially in a body subject matter as complex as these underlying patents, without expert evidence. So help me understand the procedure here. They filed a revised motion for relief to amend, correct? Correct. And then did you file an opposition to that? We did. Okay, so there was an opportunity to make the points that you wanted to make about the other claim limitations. What did you say in the opposition? We pointed out that under the board's precedent, it was a deficient revised motion to amend, because it was directed to the same claims. What's the substance? There was an opportunity. We can look at the opposition to the revised motion for relief to amend to see what your arguments were as to why the amended claims were insufficient. What did you say in the opposition as a substantive matter as to what was wrong with the claims, and particularly with respect to the preexisting claim limitations? We, again, relied on the procedural argument, Your Honor. Okay. You did not point out any substantive deficiencies in response to the revised motion to amend, correct? Correct. It was a noncompliant revised motion to amend, and so we've … So you've had no point at the board or here pointed to any substantive deficiencies with the revised, with the substitute claims? In the paper that it was expunged, that's correct, Your Honor. Okay. Anything more? All right. We'll give you three minutes to address the cross-appeal. Okay? Thank you. Mr. Kessin. Good morning, Your Honors. May it please the Court. I'm Jake Kessin for the Apelli University of New Mexico, Rainforest Innovations. I want to address the points made by the appellant. Can we start with, let's assume that you should have been allowed to file a revised motion for leave to amend or that allowing the reply was proper, okay? Okay. And that there is no procedural problem here, hypothetically. Where do we stand on Claim 44 if we hypothetically were to find that Claim 8 was unpatentable? Does that require reopening the issue as to the patentability of Claim 44? Your Honor, the Board looked carefully at Claim 44 and found that it was patentable over the combination of Talagdar and Lee. And the Board pointed out carefully to Figure 7 of Lee and said, look at the two frames, it shows the same number of pilot symbols. It shows seven pilot symbols in both. And it also shows for the time T, there's two pilot symbols. There is simply no denser pilot symbols at all in Lee. Let me ask you a hypothetical. What if the Board had said Claim 8 is unpatentable under NYSTRA? What then would relevance would that have? Don't you think it would have relevance to the amendment? Because it seems when you put together Claim 8 and Claim 1, that is amended Claim 44, full stop. So don't you think there's a relationship between the Board having found that 8 is patentable, patent-eligible, as opposed to unpatentable? And didn't that necessarily affect their analysis of the motion to amend? Yes, Your Honor. And that is correct. And the Board did find that Claim 8, in the institution decision itself, looked at NYSTROM paragraphs 4. It looked at paragraphs 29, 37, 42, and 43. And those are the paragraphs that were relied on by the petitioner and appellant to try to argue that NYSTROM teaches denser pilot symbols. But NYSTROM does not teach that. Take my hypothetical that we disagree with what the Board said and we think NYSTROM does teach pilot symbols. In other words, Claim 8 is unpatentable. Take that as a given. What does that do to the motion to amend? What it basically does is if we assume that Claim 8 is not patentable, we're still left with the issue of whether Claim 1, by itself, is not patentable over Talibdar and Leite, which is the original argument which is the focus of our cross-appeal. Okay. Well, let's assume, for purposes of my hypothetical, that we don't accept the cross-appeal. So where we come out at the end of the day is Claims 1 through 8 are not eligible, are not patentable. Where does that leave the motion to amend? So, Your Honor, the only way that you would, assuming in your hypothetical, that Claim 8 is not patentable, the only way you would then be able to argue that Claim 44 is not patentable is with a combination of Talibdar, Leite, and NYSTROM. And that combination, that argument was never made. But I'm not sure that's entirely true, because if I recall our cases, we have held that if a similar claim is held unpatentable, and here, the hypothetical, we're talking about Claim 8, that that has a bearing on the patentability of a similar claim that has not been yet addressed. So, in other words, this is sort of a collateral estoppel argument. And wouldn't that be the case here, that if Claim 8 fell, that that would have implications for Claim 44 because of the similarity of the two? So, Claim 44 has three key patents. No. What's the answer to that? If Claim 8 is unpatentable, doesn't that itself have implications for the patentability of Claim 44, given the similarities? It does have implications, Your Honor. But that is correct. The point, however, I want to bring to the attention of the Court is that Claim 44 has three key limitations. It has high-mobility section, meaning high-mobility users, reduced symbol period, and denser pilot symbols. And in order to find all these three key limitations in Claim 44, you would have to combine Talibdar, Lee, and Nystrom under the hypothetical that was posed to me. And that combination was never analyzed and never asserted by the appellant. And there's good reasons why. Well, it's true if you're addressing Claim 44 in isolation. But what I'm suggesting to you, and I thought you just agreed with me, that if Claim 8 falls, that that has a bearing on the patentability of Claim 44. In other words, if we were to hold that Claim 8 falls as well as Claim 1, don't we have to send this back to the Board to have them consider that issue? If this Court were to find that original Claim 8 is unpatentable over Talibdar and Nystrom, that being the hypothetical, then yes, it would have implications for the patentability of Claim 44 because of the denser pilot limitation. However, in this record, Your Honor, three times the Board looked at Talibdar and Nystrom. We looked at the institution decision, looked in the preliminary guidance, and in the final written decision. All three times, the Board found that Claim 8 was patentable over Talibdar and Nystrom. Where my colleagues are, if we were, hypothetically, to reach the issue of we have reversed on Claim 8, so now 1 through 8 are invalid, where does that leave us? Do we remand for the Board to reevaluate the amended claims? Or do we not? And if we don't remand, why don't we remand? I would maintain that Claim 44, with the three key limitations that I pointed out earlier, would not be found in a combination. But that has not been analyzed, correct? That was not urged by the appellant, and that three-reference combination was not on the record. On that point, though, do you disagree that our case law, I think it's Nike, but we say even if a party didn't raise that particular combination, the Board would still not be required necessarily. I don't think we're saying they're required, but they're allowed if stuff is evident on the record. These references were all in the record in front of the Board, that the Board is at least allowed to consider that sua sponte. So that's the question. Isn't that a basis for remanding, at least to determine whether or not the Board, assuming things go as we've suggested, hypothetically, they will, and claiming Claims 1 through 8 are not patentable. Shouldn't the Board have an opportunity, at least, to exercise whatever discretion it may have to consider these references with regard to the amended claim, notwithstanding that your friend, for whatever reason, didn't present those alone? Your Honors, yes, I agree that this Court has recognized that the Board can look at the totality of the record, can look at all the references, and that is correct. I do want to mention here that even the one argument with respect to Talibdar and Nystrom, that a new argument was made by Petitioner in their reply, by the appellant in their reply. They cited and made a new obviousness argument, which the Board initially said, this is waived because you're raising it for the first time in the reply. But then they... Are you talking about the amendment process? No, no, I'm only talking about Claim 8. Okay. Claim 8, and they relied on a new paragraph 3 to make a new argument in their reply. And under Intelligent Biosis v. Illumina, the decision of this Court, the Board said that obviousness argument has been made. Nevertheless, I just want to point out the care that the Board gave in this case. Using a belt-and-suspenders type of approach, they said, nevertheless, we will look at Nystrom Paragraph 3. And we don't find that it teaches Claim 8. In other words, the Board, even though it recognized there was waiver, still went past that and nevertheless looked at Nystrom Paragraph 3. So I would urge that the Board here was really quite careful.  Because we've got the regulations, we've got all these cases, some of which go different ways, and we don't have even the Board here or the Patent Office here to try to give us some explication about what their position is. But do you need these regulations? The Board does this preliminary... What is it called? Preliminary guidance. What options did you have then? You're supposed to... Probably the easiest and clearest option is to file a revised motion to amend. In the absence of a motion to amend, you're allowed to put on only new evidence. So no new arguments, but only new evidence. I mean, even... Do the regs, in your view, allow you to make this new written description argument in the reply under the rubric of new evidence, even though you didn't move to amend your motion? So here's what actually... To first answer the regulation question, the motion to amend pilot program notice 9501 clearly states that in a reply, you can respond to the Board's preliminary guidance and you can respond to the petitioner's opposition. And the decision of ortho fix med versus spine holdings is another PTAB decision that said the same thing. Well, kind of, except the problem I'm having, and as I said, I've mentioned the absence of the PTO here a few times, is that we've got ortho fix and we've got a case that went exactly the other way, Lippert or Lippert. And in ortho fix, it seems like part of the rationale is the petitioner never even objected to any of this stuff. So am I correct that we don't know really what the Board thought in ortho fix because the arguments were never made to it, right? So what are we supposed to do with that competing contradictory precedent coming out of the Board? Your Honor, in this case, we were faced with the same predicament. So what we did in this case was we filed a revised motion to amend. Even though we did not revise the claim, we filed a revised motion to amend and the Board said, you are not presenting new claims, so we are going to expunge the revised motion to amend and we simply want you to file the same thing as a reply. Okay, so was that an error in rejecting the revised motion? It's an interpretation of the rules where they basically have a lot of discretion on these kind of procedural matters. That's what this Court has ruled in cases like Meditox v. Galderman. I'm trying to answer my question. Was it error to reject the revised motion or wasn't it? We understand the reasoning that since we did not amend the claim, we didn't produce a new claim. That was the line that the Board was drawing, saying you're not presenting new claims, so therefore this properly belongs in a reply. And in the reply, you're allowed... So what's the answer to my question? Is it error or not? I don't believe it was an error because the rule says you can use the reply to respond to the preliminary guidance. And in the preliminary guidance, the Board found the same sections that you're citing for the new amended language, that same section shows written description support for the original language. So we don't think there's any problem here. This is just a matter of sort of form over substance. The substance of written description is solid and the specific columns and lines you cite do support the whole claim. What about your friend's contention that he was prejudiced because he never had a chance to gather expert testimony to respond to the new written description support you pointed out in the reply? Well, in our original motion to amend, we point specifically to paragraphs in the patent in columns 5, 7, and 9, which show support for the whole claim. In their opposition to the motion to amend, they never raised any issue of written description in terms of the substance. The Board looked at it in the preliminary guidance and also said that there was support right here. In addition, because... Are you arguing that they weren't prejudiced if there was an error? I don't believe there was any prejudice because the citations were the same. The citations were right there. The written description support was shown and it was not challenged. In addition, Your Honor, the Board expanded the number of pages for the SIR reply in this case and said we're going to give you the full 25 pages instead of the 12 pages and we're going to give you the full 25 pages as though you're responding to a revised motion to amend so that you're not in any way prejudiced. And so... Where's that in the record? I believe we'll provide the site for you, Your Honor, but the SIR reply was clearly expanded to 25 pages in this case by the Board. Can I go back to this rule? I mean, arguably, we've called upon, in our opinion, to distill what the rule is, what you can put in your reply in response to the preliminary guidance. And you've confirmed, I think, that we've got one Board decision that says no and another that says, yes, you can, but it was never contested by the petitioner. And now we've got this case relying on the case that there was no contest. So the expectation is we're supposed to come up with a rule that the Board's supposed to follow in the absence of any more guidance from the Board on this? It seems to me, Your Honor, in this case, the Board is trying to draw a bright line. The Board is saying, here's the bright line. You file your motion to amend, and if you want to amend the claim again, then you file a revised motion to amend. Otherwise, you go down the reply path. Can I ask you just one quick question about what happened here? You got a little more from the Board. In the preliminary guidance, they didn't just say, hey, you guys blew it, and you didn't talk about all of the elements in the claim and written description. They kind of laid it out for you. Does that make a difference here in this case? I think it made a difference. It may have made a difference in this case in the sense that the Board was, you only showed support for the new language, like you do in traditional prosecution. But you didn't show the support for the original language. But we see that where you point it, it's right there. So go ahead and fix it. It's sort of a, this is an oversight, we get it. And so that may have prompted them to go down the path of show this in the reply because it clearly was right there. Maybe there's no rule, and it just depends. I mean, do you think we should discern, distill from the Board's non-precedential precedent here that essentially the Board can do what it wants, and we should allow them to do that? So here when they thought it was evident on its face, and they told you that in the preliminary guidance, you get more leeway in the reply that you might otherwise have? I mean, you say the Board did a bright line rule. I see anything but bright line rules coming from all of this precedent here. Yeah, I just, I was just talking about in this case, I understand, Your Honor. But in this case, because we didn't revise the claims, they said, hey, you can't file a revised motion to amend. This Court has always given, has always held, that the Board has discretion over procedural matters such as this. And it seems to me that there might be situations in the future where perhaps it might make sense to file a revised motion to amend even if you don't amend the claims. But we were not sure. So that's why, with an abundance of caution, we filed a revised motion to amend because we weren't sure. And then the Board told us, well, take it. Yeah, but that's off the table because the Board rejected that, and you have to deal with that, and I don't think it would be an abuse of discretion for them to have rejected that. So that's gone. Right. So keep going. I mean, we have the same dilemma that you're, because we weren't sure about, hey, now this is, of course, two years ago. This was in early 2022 where the motion to amend program was even newer, you know, at that stage. So we ourselves have that same question. I suspect that this is a situation where, in the Board's eyes, this was merely an oversight because the support was so clear. It was the support, the written description issue was really a non-issue. So they might have reached a different decision in another case where it wasn't so clear. Indeed. In fact, in other cases, such as Lippert v. Day, the Court found that you provided these written description support, but these are undue spring citations, and we can't figure this out. And so we are, you know, in the preliminary guidance, they rejected written description. In our case, they did not. Okay, so unless my colleagues have further questions on the motion for leave to amend, we'll give you a couple of minutes to argue about Claim 8 and the Cross-Appeal, because we've occupied most of your time. Yeah, I just want to mention a couple of points on the Cross-Appeal. Should I wait until later or do it now? No, go ahead. Okay. The original claims 1 through 4, 6 and 7, which were found to be obvious over Talibdar and Lee, this is a clear example of using the 096 patent itself to try and arrange pieces of the prior art. Because if Talibdar shows a two-subframe, two-communication system, a legacy and new, and it's a system approach, and Lee here talks, it looks at a legacy system, 802.16e system, with fast-moving and slow-moving users. So here's the system approach of Talibdar, here's the user approach of Lee, and if you put them together, then you simply do not get Claim 1 of the 096 patent. When we've gone through in our briefing all the permutations and combinations, it's only when you look at Claim 1 and you say, aha, now I'm going to, in the new communication piece, I'm going to take the high-mobility users of Lee and I'm going to put it in there, and then I'm going to use the reduced symbol period that Lee teaches, but I'm not going to apply it anywhere else. So it's cherry-picking the pieces and arranging them after reading the 096 patents. It's a perfect example of hindsight reconstruction that cases like Ingray-Gorman, et cetera, have repeatedly cautioned against. It's the kind of obviousness analysis that the board did, where basically in normal inventive processes, if you put Talibdar and Lee together, first of all, we don't think you could even put those two together because the system and user approach that I mentioned, but even if you did, there's no way to arrive at these claims. I also want to mention one more point. Do you have a question? We have another minute. We're dealing with a very troubling situation here with respect to appellant's expert, Dr. Roy. Dr. Roy misrepresented under oath that this was his report, and it was not. It was a word-for-word copy of Dr. Ackle. In fact, your honors, in 30 years of practice, I have never seen a situation like this, where literally the person had copied word-for-word. The only changes made was to see that FOSA. He misrepresented his role and what he did. The next day after the deposition, we told the board that we're going to file a motion the very next day. The board basically, and then we filed it later, but the board basically said, when you told us about that, you didn't say that you're going to move to exclude. You simply said you're going to file a paper to oppose that testimony. And so they basically essentially said, even if we look at this, this is a matter that goes to weight and not admissibility, and we think it's so egregious that it's really a matter of a threshold issue of admissibility and not weight. Okay, Karen. Thank you. U.S. site, right? You're going to have, we'll give you two minutes for your rebuttal on the cross-appeals, so you can provide us with the site when you do that. And, okay, Mr. Dietrich, let's give you four minutes here, okay? Thank you, Your Honor. I'd like to first talk about Claim 8, and if Your Honors were to find Claim 8 to be unpatentable, I would respectfully submit that at the very least, remand would be appropriate to allow the Board to consider that full combination. All three of the references, Talat, Darley, and Nystrom, they're all about OFDM systems. They're all about the 802.16 standards. They're all about movement, especially Lee and Nystrom in those standards. So there's no question that they're analogous art. And I'd also respectfully submit that the reasons for combining Talat, Darley, with both Lee and Nystrom are already set forth in the present record. Specifically, the Board determined that Talat, Darley disclosed a hybrid frame structure comprising subframes that supported both slower-moving 802.16E subframes and faster-moving 802.16M subframes. And Lee and Nystrom both relate to... Let me just be clear, though. On this record, you didn't ask for that in this appeal, and below you never raised Nystrom as a relevant prior art for the amended claim. That's right, Your Honor. But you think that we can forego all of that arguable forfeiture on what basis? I'm just admitting, Your Honor, that it would be appropriate, if claim eight was found unpatentable, to remand for further determinations on the combination. But do you agree that on remand it's up to the Board as to whether or not they want to consider Nystrom since it's part of the record, even though you didn't raise it? That may be the case, Your Honor. I respectfully am not sure. But they certainly have to consider the collateral estoppel effect of the invalidation. Yes, Your Honor. But again, on forfeiture, it seems like you forfeited this argument both at the Board and here on appeal. So why should we look the other way?  than the unpatentability in view of Nystrom? And the reasons for not making those arguments in the motion to amend were based on the Board's erroneous conclusions. But point taken, Your Honor. Can I ask you, I don't think that's correct, right? I mean, I don't know what the time frame is. You know better than I. But by the time you were submitting your opposition to the motion to amend, you didn't, the Board hadn't ruled against you on Claim 8. Or am I wrong about that? It had on the institution decision. Okay, okay. And I'd also like to turn, address Your Honor's questions regarding the record. I believe there were some questions regarding petitioner's opposition to the revised motion to amend. I don't have a joint appendix, unfortunately. I just don't think that's in the record. There is the Board's order, portions of the Board's order expunging that appendix, page 1080, which addresses the page limits of the civil reply, but not the evidentiary question of submitting expert evidence. So it's in the record. You just didn't put it in the appendix? Or you don't think it's in the record at all? The former. And just briefly on Dr. Roy, at his deposition, Dr. Roy testified that he based his declaration on Dr. Adle's and that his edits to the technical substance were minimal. That was up front in the motion for joinder and the petition, which requires no new technical issues. I think the important point here is that Roy is eminently qualified. He fully defended all of the substance of his own opinions, and he simply agreed with the opinions of another expert. And nothing prohibits him from doing so. And if anything, the Board is proper to consider that in the way accorded to his testimony. It's not an admissibility issue. Okay. Thank you. I think we're out of time. Thank you. Mr. Kessin, do you have the cite for us? Is it in the record? Yes, I do. The certify, the 25-page certify, begins in APPX 1115. So we can see that the number of pages were expanded. Where is the order? In addition to that opportunity. Where is the order? I'm sorry. Where do we find the order giving them the 25 pages? The order expunging the revised motion to amend begins in APPX 1078, 1078. And in the phone, in the telephonic conference, is where the Board said you can take more pages, and that's what they did. So was that in the record? I am not sure if it was in the record or not. But the order expunging begins at 1078. I'm not sure about the 25 page. However, following that expungent, it's clear that something was said because instead of a normal 12-page certify, a 25-page certify was filed by the appellant starting on APPX 1115. So they were given an opportunity to expand. A couple of related points, Your Honor. The... Dr. Roy, and we provided excerpts in our briefing, did not say, as appellants are arguing now, that I read Dr. Ackle's report and I adopted it. That, of course, is not an unfamiliar situation. Instead of saying, well, I read his report and adopted it, instead Dr. Ackle misrepresented what he did and his work and his contributions and tried to pass off the other report, which he didn't write, made literally no changes, word for word, and tried to claim it was his own. I think we're about out of time. Thank you, Your Honor. Thank you, Your Honor.